**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alberto Garcia and Rosa Marin, | No. CV-17-03032-PHX-DGC |
| Plaintiffs, | |
| v. | **ORDER** |
| Office Keepers LLC, et al., | |
| Defendants. | |

On February 22, 2018, the Court held an evidentiary hearing on the motion for a preliminary injunction filed by Defendant/Counterclaimant Office Keepers LLC. Doc. 31. After considering the evidence submitted by the parties and the arguments made in writing and at the hearing, the Court will deny the motion.

**I.  Legal Standard.**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Such an injunction may be granted if the movant "establish[es] that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

/ / /

## II. Analysis.

Office Keepers asks the Court to prohibit Plaintiffs Alberto Garcia and Rosa Marin from soliciting customers for whom Officer Keepers performed work during the 12 months preceding Plaintiffs' separation from the company in July 2017, from soliciting Office Keepers' independent contractors to work for Plaintiffs' new company, and from using confidential information gained during their employment. Office Keepers asserts that it is likely to succeed on the merits of four claims: (1) misappropriation of trade secrets, (2) tortious interference with contract and with prospective business relations, (3) unfair competition, and (4) breach of contract. Doc. 31 at 8-15. Office Keepers has failed to show that it is likely to succeed on any of these claims.

### A. Misappropriation of Trade Secrets.

Office Keepers alleges that Plaintiffs violated the Arizona Uniform Trade Secrets Act, A.R.S. § 44-401, et seq. ("AUTSA"). That statute defines a trade secret as information that "[d]erives independent economic value, actual or potential, *from not being generally known to, and not being readily ascertainable by proper means by*, other persons who can obtain economic value from its disclosure or use." § 44-401(4)(a) (emphasis added). During the hearing, Office Keepers presented evidence that Plaintiffs have used the identities of Office Keepers' customers, and contact information related to those customers, to contact the customers and solicit business for Plaintiffs' new company. Office Keepers did not present evidence that Plaintiffs have used any other confidential information.

Office Keepers is not likely to prevail on its claim that the identities and contact information of its customers constitute trade secrets. Office Keepers' customers are companies that contract to provide janitorial services to various businesses or entities. The customers then subcontract the actual janitorial work to companies like Office Keepers. Plaintiffs' counsel aptly characterized these customers as brokers of janitorial cleaning work.

Two of the five customers identified in Office Keepers' motion testified during the hearing. Mark Adriansen, the owner of System4, testified that his company is publicly known as an entity that subcontracts for janitorial services. He testified that he uses approximately 80 subcontractors like Office Keepers. He advertises his business on the Internet, has a website, and readily provides contact information. The fact that he is in the business of subcontracting janitorial work, and his contact information, cannot be said to be trade secrets within the definition of the AUTSA. That information is generally known to persons who can obtain economic value from it, and is "readily ascertainable by proper means." *Id*. An Internet search would identify System4 as a company that subcontracts out janitorial work.

Mike O'Donnell is the owner of City Wide of Phoenix, another of Office Keepers' customers. O'Donnell testified that he uses approximately 30 subcontractors like Office Keepers. His company advertises on the Internet, and he invites janitorial companies like Office Keepers to apply for work. Again, it appears that the position of his company as a possible supplier of janitorial work is not secret, and that his identity and contact information are readily ascertainable by proper means.

Office Keepers presented evidence regarding other allegedly sensitive information contained in documents that Plaintiffs did not return when they left Office Keepers' employment. This included information regarding specific janitorial jobs, the times when the work was performed, billing information, and building access codes. But Office Keepers presented no evidence that this information has been used by Plaintiffs. Office Keepers has not shown that Plaintiffs are misappropriating information properly categorized as trade secrets under the AUTSA.

Office Keepers' motion also cites the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. Doc. 31 at 11. But Office Keepers does not identify the requirements of this statute, and does not explain how the readily ascertainable information discussed above could be viewed as a trade secret under it.

/ / /

### B. Tortious Interference.

Office Keepers alleges that Plaintiffs have tortiously interfered with contracts and prospective business with its customers. To demonstrate such interference, a party must show: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) [] damage to the party whose relationship or expectancy has been disrupted." *Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau*, 637 P.2d 733, 739-40 (Ariz. 1981); Doc. 31 at 11.

Office Keepers has not shown that it is likely to prevail on the third element of this claim. Evidence presented at the hearing showed that Plaintiffs have indeed contacted companies that provide work to Office Keepers – Mr. Garcia made contact with a number of Office Keepers' customers after he terminated his employment and started his own business. But Office Keepers presented no evidence that these contacts induced or caused a breach of a contractual relationship between Office Keepers and its customers, or loss of a valid business expectancy. The evidence demonstrated that Office Keepers' customers use many different companies to perform their janitorial work, and that Plaintiffs have obtained some of that work. The evidence did not show that Plaintiffs received work that was taken from Office Keepers – that Plaintiffs caused a customer to breach a contract or a business expectancy with Office Keepers.

To be sure, Office Keepers believes that Plaintiffs caused LandCorp Management Services to withdraw work from Office Keepers. Marci Hernandez, an owner of Office Keepers, testified that an employee of LandCorp informed Office Keepers that LandCorp was taking away all of Office Keepers' accounts because someone from Office Keepers' office suggested to LandCorp that Office Keepers was paying its independent contractors incorrectly. Mrs. Hernandez suspects that this individual was Mr. Garcia, but provided no direct evidence of that fact. And she acknowledged that LandCorp's stated reason for terminating the accounts was that LandCorp's contract prohibits Office Keepers from

using independent contractors – the very kinds of janitorial workers that Office Keepers uses. Although Mrs. Hernandez testified that she genuinely believes Mr. Garcia was behind LandCorp's termination of Office Keepers' work, she was unable to present direct evidence of that fact. And she acknowledged on cross-examination that she knows of no LandCorp account previously serviced by Office Keepers that is now serviced by Plaintiffs.

Office Keepers also presented evidence that Plaintiffs are currently providing janitorial services at Benchmark School, an account that Office Keepers previously serviced through a subcontract with City Wide of Phoenix. But City Wide's facility services manager, Rafael Moreno, testified that he decided to give the Benchmark work to Plaintiffs – they did not solicit it from him.

Given this evidence, Office Keepers has not shown that it is likely to succeed in proving that Plaintiffs induced or caused a breach of contract or termination of a legitimate business expectancy.

**C.     Unfair Competition.**

In support of this claim, Plaintiffs rely on *Fairway Constructor's Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998). Doc. 31 at 13. That case held that the general purpose of the doctrine of unfair competition "is to prevent business conduct that is 'contrary to honest practice in industrial or commercial matters.'" *Fairway*, 970 P.2d at 956 (citation omitted). Office Keepers argues that Plaintiffs are "attempting to take a shortcut [in] growing [their] janitorial services business by stealing the contracted labor and customers that Office Keepers has invested substantial time and effort to develop." Doc. 31 at 14. "Stealing" is the key word in the sentence, and it was not borne out by the evidence.

The evidence demonstrated that Office Keepers does not have an exclusive contract with any of its customers. The customers can, and do, give work to many providers of janitorial services. Given this evidence, the Court cannot conclude that Plaintiffs engaged in dishonest practices when they solicited work from these customers.

Obtaining work from these customers would not require a dishonest act or that any of the customers stop using Office Keepers.[1]

Similarly, evidence at the hearing demonstrated that Office Keepers does not use employees to perform janitorial services; it uses independent contractors. One of these contractors, Erica Hernandez, testified that she cleans a number of offices for Office Keepers, but that she also cleans offices for Plaintiffs' new company. She testified that Carlos Hernandez, one of Office Keepers' owners, told her that he has no objection to her working for others. And Office Keepers acknowledged during the hearing that it uses many of its independent contractors only on a part-time basis. Thus, Plaintiffs' soliciting of independent contractors to perform work for Plaintiffs' company would not necessarily mean that the independent contractors must stop working for Office Keepers or even reduce the hours they devote to Office Keepers. The Court cannot conclude that such solicitation necessarily requires dishonest business practices.

Office Keepers did present evidence that Mr. Garcia told Ms. Hernandez that he would make checks payable to her boyfriend so that Office Keepers would not know she was working for him. This appears to be a dishonest business practice, but the Court cannot conclude that such dishonesty is necessary in order for Plaintiffs to procure work from independent contractors who happen to also be working for Office Keepers. Thus, the Court cannot conclude that Office Keepers is likely to prevail on its claim that the *solicitation* of its independent contractors constitutes an unfair business practice.

**D.  Breach of Contract.**

Plaintiffs' contracts with Office Keepers provided that Plaintiffs would not, for a period of 12 months after the termination of their employment, "solicit, or attempt to solicit, business or patronage from any Customer for whom Office Keepers has performed Services during the twelve (12) months prior to the termination of this agreement[.]" Doc. 31 at 3. The contracts also prohibited Plaintiffs, during the same 12-

---

[1] Office Keepers does allege that Plaintiffs breached restrictive covenants in their contracts with Office Keepers. That claim is addressed next.

month period, from soliciting "any employees or other independent contractors or agents of Office Keepers to work for any person or entity which performs the Services." *Id*. Office Keepers argues that Plaintiffs are breaching these restrictive covenants by soliciting its customers and independent contractors.

"The validity of a restrictive covenant is determined by its reasonableness." *Phx. Orthopaedic Surgeons, Ltd. v. Peairs*, 790 P.2d 752, 758 (Ariz. Ct. App. 1989), *disapproved of on other grounds by Valley Med. Specialists v. Farber*, 982 P.2d 1277 (Ariz. 1999). A restrictive covenant is reasonable and therefore enforceable by injunction where (1) the restraint does not exceed that necessary to protect the employer's legitimate interest, (2) the restraint would not cause undue hardship to the employee, and (3) the restraint would not cause harm to the public interest. *See id.* at 757. "In the commercial context, it is clear that employers have a legitimate interest in retaining their customer base." *Valley Med. Specialists*, 982 P.2d at 1284.

Office Keepers has not shown that it is likely to succeed on its claim that the restrictive covenants are necessary to protect its legitimate interest in retaining its customer base. As noted above, Plaintiffs are soliciting future business from entities that subcontract janitorial services to a wide number of companies like Office Keepers. Soliciting such business does not necessarily interfere with Office Keepers' relationship with these customers, and the Court therefore cannot conclude that the restrictive covenants are necessary to protect Office Keepers' legitimate interest. *Phx. Orthopaedic Surgeons*, 790 P.2d at 757. As noted above, Office Keepers does assert that Plaintiffs persuaded LandCorp to terminate its relationship with Office Keepers, but Office Keepers was unable to present any clear evidence of this fact.

The same is true of the covenant that prohibits solicitation of Office Keepers' independent contractors. Because they are independent contractors who can work for more than one company, soliciting them does not necessarily mean that they will abandon or even reduce their work for Office Keepers, and Office Keepers therefore has not shown that it has a legitimate interest in prohibiting their solicitation.

For these reasons, Office Keepers has not shown that it is likely to prevail on its claim that the restrictive covenants protect legitimate interests and are enforceable.

## III. Conclusion.

Because Office Keepers has not shown that it is likely to prevail on any of the four claims addressed in its motion, the Court concludes that Office Keepers has not shown that it is entitled to the extraordinary remedy of a preliminary injunction. The Court need not address the other requirements for such an injunction.[2]

**IT IS ORDERED** that Office Keepers' motion for a preliminary injunction (Doc. 31) is **denied.** The temporary restraining order previously entered by the Court (Doc. 42) is dissolved.

Dated this 26th day of February, 2018.

_David G. Campbell_
David G. Campbell
United States District Judge

---

[2] Under Ninth Circuit law, a party can also obtain a preliminary injunction by raising serious questions and showing that the balance of hardships tips sharply in its favor. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). Office Keepers has not argued that it is entitled to relief under this standard, but even if it did, the Court would deny relief. Given the facts set forth above, the Court cannot conclude that the balance of hardships tips sharply in Office Keepers' favor.